IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 12, 2005

## STATE OF TENNESSEE v. WILLIAM HENRY WILSON

**Direct Appeal from the Circuit Court for Blount County**
**Nos. C-14607, C-14608   D. Kelly Thomas, Jr., Judge**

---

**No. E2004-01983-CCA-R3-CD - Filed May 4, 2005**

---

The Defendant, William Henry Wilson, pled guilty to one count of delivery of .5 grams or more of a schedule II controlled substance, and to one count of delivery of less than .5 grams of a schedule II controlled substance. The trial court sentenced the Defendant to an effective sentence of ten years, and the Defendant appeals, contending that his sentence is excessive. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal) and Mack Garner, Maryville, Tennessee (at trial) for the appellant, William Henry Wilson.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Michael L. Flynn, District Attorney General; Michael A. Gallegos, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I.  Facts

The Defendant, William Henry Wilson, pled guilty to one count of delivery of less than .5 grams of a schedule II controlled substance, cocaine, a Class C felony, in case number C-14607, and to one count of delivery of .5 grams or more of a schedule II controlled substance, cocaine, a Class B felony, in case number C-14608. At the sentencing hearing, the parties stipulated that, had this case gone to trial, the State would prove:

> The [confidential informant] was equipped with an electronic listening device, [and] $200 of marked buy money. The [confidential informant] was followed directly to the residence on Homer Avenue, which is where the Defendant then lived. And

by [the officer] and Agent Bobby Shaffer, the [confidential informant] was observed entering the residence. The [confidential informant] made contact with an older black male identified as . . . this Defendant . . . the [confidential informant] then gave the $200 buy money to [the Defendant], who stated that he would return in a few minutes with $200 worth of crack cocaine. The [confidential informant] then observed [the Defendant] leave the residence on foot and then return several minutes later driving the . . . vehicle. When [the Defendant] entered the residence, he exchanged four-tenths of a gram with the CI for $150 of the money.

In the other transaction . . . [t]he [confidential informant] made contact with [the Defendant] at his residence. The [confidential informant] then spoke to [the Defendant] regarding purchasing cocaine. At this time, [the Defendant] made a telephone call, told the [confidential informant] it would be a few minutes. After a few minutes, [the Defendant] left the residence, returned a short time later with three bags containing cocaine. The [confidential informant] then exchanged $100 of marked buy money with [the Defendant] for the three bags of cocaine.

And I believe the indictment set out that one of those transactions was on October 23rd of 2002 and the other was on October 24th, 2002.

. . . .

[O]ne of the transaction looks like 1.2 grams . . . and one is 0.3 [grams] . . . .

The Defendant's presentence report was admitted into evidence. The presentence report showed that the Defendant was sixty-two years old, and the Defendant told the investigating officer "that he knew somebody that had some cocaine and [he] was getting the cocaine for someone else. He said he had done this a few times before as a favor for friends." The report stated that no mitigating factors were filed by the defense in this case, and none were discovered during the presentence investigation. The Defendant admitted to being convicted of a felony in Kentucky in 1980. The Defendant also indicated to the investigating officer that he was not in good health, mentally or physically. He said that he suffers from: depression; post traumatic stress disorder; and knee, foot and jaw problems. Further, he said that he is getting treatment for these problems at the V.A. hospital in Johnson City. The Defendant admitted to drinking some alcohol, using marijuana a year prior, and using cocaine on occasion, with his last use a few months prior to the presentence investigation. The VA hospital records indicated that the Defendant was prescribed a number of medications. Further, they indicated that the Defendant tested positive for opiates and cocaine. The Defendant indicated that his only family is a daughter, with whom he has infrequent contact. The Defendant received his GED in 1961, and he was honorably discharged from the Army in 1966 after serving six years.

The Defendant confirmed much of the information in the presentence report, and he also stated that he does not recall the drug transactions to which he pled guilty. He said that, contrary to

what he told the presentence investigating officer, he had gotten cocaine for various friends of his in the past. He also said that he did not know the confidential informant to whom he sold drugs. The Defendant said that, after leaving the military, he worked as a molder and he worked for the Tennessee Department of Transportation. The Defendant said that he has been receiving a V.A. pension, in addition to disability payments that he has received since he injured his back. The Defendant admitted that, in 1983 or 1984, he was convicted of receiving stolen property in Kentucky, and he served six or seven months in prison. The Defendant testified that he was on a number of medications for various ailments, including mental impairments and hepatitis-C. The Defendant said that, if he was placed on probation, he would continue to live where he lives now because he needed to have part of his foot removed and was awaiting treatment for his hepatitis-C. He said that, if he were tested for drugs on the day of the sentencing hearing he did not think that he would test positive for any drugs. He also indicated that it had been approximately one month prior to the hearing since he had used cocaine. The Defendant said that he had a pending DUI charge.

On cross-examination, the Defendant admitted that he was arrested for: assault and battery in 1966; accessory after the fact in 1971; receiving stolen property, a felony, in 1971; transporting a stolen vehicle in 1972; theft by unlawful taking and receiving stolen property in 1976; possession of dangerous drugs, possession of narcotics, trafficking narcotics, and felon in possession of a firearm, in 1979; trafficking heroin and possession of marijuana in 1980; possession of stolen property in 1984; two armed robberies in 1988; and two DUIs - one in 1997 and one in 2002. The Defendant asserted that he was not convicted of many of these charges. The Defendant had been convicted of felony receiving stolen property, trafficking controlled substances, possession of a controlled substance, and DUI. The Defendant admitted that he had been involved with drugs "off and on" from 1970 until 2004. The Defendant said that he did not remember from whom he got the cocaine in this case because he did not "really know these people that well." He said that this was "not necessarily" the only time that he obtained cocaine from someone, and he asserted that cocaine "was in the neighborhood . . . pretty much everywhere." He said that it was "no regular thing" for him to deliver cocaine, but he admitted that he would "sometimes" deliver cocaine for "a person that's supposed to be a friend." He said that he received "nothing, as a rule" for his assistance in these transactions.

Based upon this evidence, the trial court found:

[The Defendant] has pled guilty to two offenses [a] Class B felony for delivery of cocaine and a Class C felony. I've reviewed the presentence report and listened to the proof and to the attorneys' arguments. I find an enhancing factor to be present in the proof. That is, that [the Defendant] has a prior criminal history, both of convictions and criminal behavior. He has at least four prior felony convictions, . . . he had a year probation in '72. Then he got these convictions in '85. And since that time, according to his testimony, he has continued to violate the law. And, I don't know, maybe not in the last month, but it's not real clear on that. But he was very matter of fact about getting cocaine from friends from time to time, which each time that happens that's a separate felony offense that hasn't been charged.

I think the convictions, the behavior, all of that over the years is something that can't be ignored. Sympathy for bad health is sympathy for bad health. But people who are in bad health don't have to be dealing cocaine. That's the significance.

The trial court then sentenced the Defendant, as a Range I offender, to ten years in prison in case number C-14608, and it sentenced him to four years in case number C-14607. The trial court ordered that the sentences run concurrently. The trial court found that the Defendant was not eligible for probation, and it ordered the Defendant to serve his sentence in the Department of Corrections Special Needs Unit.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it sentenced him. The Defendant concedes that "he has enough prior convictions and behavior to qualify as an enhancing factor for his sentences as the Trial Court found." However, he states that the trial court failed to apply in mitigation: (1) that his actions did not cause or threaten serious bodily injury; (2) that substantial grounds exist tending to excuse or justify his criminal conduct, though failing to establish a defense; (3) that he was suffering from a mental or physical condition that significantly reduced his culpability for the offense; and (3) that other factors existed in mitigation, the so-called catchall provision. See Tenn. Code Ann. § 40-35-113(1), (3), (8) and (13) (2003). Further, the Defendant asserts that the trial court should have sentenced him to an alternative sentence.

When a defendant challenges the length, range or the manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In calculating the sentence for a Class B and Class C felony conviction, the presumptive sentence is the statutory minimum for a Range I offender if there are no enhancement or mitigating factors. See Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann.§ 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Tenn. Code Ann. § 40-35-210(e). The sentence range for a Range I offender for a Class B felony is not less than eight years or more than twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (2003). The sentence range for a Range I offender for a Class C felony is not less than three or more than six years. Tenn. Code Ann. § 40-35-112(a)(3) (2003).

A defendant is eligible for alternative sentencing if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a)(2003). A defendant who is a standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(b)(6) (2003).

The Defendant's contention that the trial court erroneously failed to apply four mitigating factors when it enhanced the Defendant's sentence is without merit. As to the first mitigating factor, that the Defendant's actions did not cause or threaten serious bodily injury, see Tennessee Code Annotated section 40-35-113(1), this Court has stated that "the sale of cocaine is not so sufficiently free from all danger such that it can be used to mitigate a seller's sentence." State v. Holston, 94 S.W.3d 507, 512 (Tenn. Crim. App. 2002) (citations omitted). Further, the evidence does not preponderate against the trial court's refusal to apply the next mitigating factor, that substantial grounds exist tending to excuse or justify his criminal conduct, though failing to establish a defense. See Tenn. Code Ann. § 40-35-113(3). The Defendant's argument on appeal is that this mitigating factor should be applied because he was not profiting from these deliveries, but was helping friends, and he used cocaine to "escape his pain from time to time." In our view, neither of these assertions by the Defendant, even if true, are cognizable excuses or justifications for his criminal behavior, and the trial court did not err by refusing to apply this mitigating factor.

The Defendant also asserts that he was suffering from a mental or physical condition that significantly reduced his culpability for the offense, which should be considered to mitigate his sentence in accordance with Tennessee Code Annotated section 40-35-113(8). It is clear from the

record that the Defendant was suffering from both mental and physical conditions, but he has failed to show how that significantly reduced his culpability for this offense. This issue is without merit.

Finally, the Defendant asserts that the trial court should have considered, under the catchall mitigating provision, that his "poor mental and physical health would make a sentence above the statutory minimum greater than that deserved for the delivery offenses he committed . . . ." See Tenn. Code Ann. § 40-35-113(13). The trial court did, in fact, consider the Defendant's poor health, and it stated, "Sympathy for bad health is sympathy for bad health. But people who are in bad health don't have to be dealing cocaine. That's the significance." The trial court also ordered that the Defendant serve his sentences in the Special Needs Unit of the Department of Correction to ensure that "he receives the treatment that he needs." We conclude that the trial court did not err when it declined to reduce the Defendant's sentence based on this mitigating factor.

The result of the trial court's application of one enhancement factor and no mitigating factors is adequately supported by the record, and the Defendant's ten-year sentence was proper. The Defendant has failed to carry his burden of showing that the sentence was improper. Furthermore, because the Defendant was properly sentenced to ten years for his Class B felony conviction, he is not eligible for alternative sentencing. See Tenn. Code Ann. 40-35-303(a). This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's sentence.

_____
ROBERT W. WEDEMEYER, JUDGE